**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | | |
|---|---|---|
| **BEN LINYARD, on behalf of himself and all others similarly situated,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | **Civil Action No. 6:25-cv-00436** |
| **v.** | § | |
| | § | |
| **AMERICAN ECONOMY INSURANCE COMPANY,** | § | |
| | § | |
| **Defendant.** | § | |

**FIRST AMENDED CLASS ACTION COMPLAINT**

1. The cost of homeowners insurance in Texas has risen dramatically over the past two years. According to the Texas Department of Insurance ("TDI"), from 2013-2022 the average annual rate change for a homeowners policy was an increase of 5.1%. In 2023, rates jumped 21.1%, followed by another rate hike of 18.7% in 2024.




https://www.tdi.texas.gov/blog/auto-and-home-insurance-rate-changes.html.

2. According to the TDI, the "rate" is the cost of insurance per exposure unit (i.e., the cost per $1,000 of home coverage) that an insurer sets, and the "premium" is the total amount the insurer charges for an insurance policy.[1] As a simplified example, an insurance company may charge a *rate* of $6.00 per $1,000 of home insurance coverage for a year. For $500,000 in coverage, the annual *premium* would be $3,000. While the premium also incorporates factors other than the rate, an increase in the rate generally translates to a comparable increase in the premium.

3. The Texas state legislature has taken steps to help ameliorate the effects of large rate hikes by home insurers, including the enactment of laws requiring insurers to notify policyholders when rates or premiums are increasing by 10% or more. Texas Insurance Code § 2251.005 requires insurers to provide notice to its policyholders of a rate increase that will result in a premium increase of 10% or more. Texas Insurance Code § 550.002 goes a step further, precluding insurers from increasing the amounts automatically withdrawn from policyholders' accounts (including, for example, mortgage escrow accounts) unless they provide mailed notice of the increase, explain how the policyholder may object to the increase, and the policyholder does not object.

4. The purpose of these statutes is to alert policyholders—many of whom automatically renew their policies and passively pay their homeowners insurance bills as part of their mortgage escrow payments—of significant rate and premium

[1] Texas Department of Insurance, "How are your auto and homeowners insurance costs calculated?" available at https://www.tdi.texas.gov/consumer/how-are-your-auto-and-homeowners-insurance-costs-calculated.html.

increases. This allows policyholders to make informed renewal decisions and shop around for comparable coverage at a lower cost, increasing competition and helping to keep prices affordable.

5. Defendant American Economy Insurance Company ("AEIC"), a Liberty Mutual/Safeco Company, provides homeowners insurance to over 100,000 policyholders covering residential properties in Texas.

6. AEIC has significantly increased their rates (and premiums) on homeowners several times over the last few years. The following is a summary of those rate increases, as reported to the TDI:

| Company Name | Received Date (YYYY/MM/DD) | Effective Date (new business) | Effective Date (renewal business) | Percent Change | State Type of Insurance |
|---|---|---|---|---|---|
| AMERICAN ECONOMY INSURANCE COMPANY | 2022/03/07 | 2022/05/03 | 2022/07/09 | 11.0% | Homeowners |
| AMERICAN ECONOMY INSURANCE COMPANY | 2022/05/05 | 2022/09/17 | 2022/11/23 | 0.0% | Homeowners |
| AMERICAN ECONOMY INSURANCE COMPANY | 2022/06/24 | 2022/07/07 | 2022/09/12 | 10.2% | Homeowners |
| AMERICAN ECONOMY INSURANCE COMPANY | 2023/01/19 | 2023/02/03 | 2023/07/09 | 12.0% | Homeowners |
| AMERICAN ECONOMY INSURANCE COMPANY | 2023/04/12 | 2023/07/07 | 2023/09/12 | 12.0% | Homeowners |
| AMERICAN ECONOMY INSURANCE COMPANY | 2023/08/22 | 2023/10/21 | 2023/12/27 | 8.1% | Homeowners |
| AMERICAN ECONOMY INSURANCE COMPANY | 2023/11/01 | 2023/12/15 | 2024/02/20 | 11.0% | Homeowners |
| AMERICAN ECONOMY INSURANCE COMPANY | 2023/12/23 | 2024/02/17 | 2024/04/24 | 3.0% | Homeowners |
| AMERICAN ECONOMY INSURANCE COMPANY | 2024/03/15 | 2024/05/03 | 2024/07/09 | 16.2% | Homeowners |
| AMERICAN ECONOMY INSURANCE COMPANY | 2024/05/28 | 2024/07/07 | 2024/09/12 | 4.2% | Homeowners |
| AMERICAN ECONOMY INSURANCE COMPANY | 2024/08/01 | 2024/10/21 | 2024/12/27 | 22.1% | Homeowners |

7. Taking one of these increases as an example, AEIC's March 2024 rate filing with the TDI shows that, on that occasion alone, it raised its rates on 99.9% of its policyholders by more than 10%, raising rates on the vast majority of its policyholders by more than 15%:

| Rate Change Interval | | # of Policies | % of Policies |
|---|---|---|---|
| No Change | | 0 | 0.0% |
| 0.1% | 5.0% | 1 | 0.0% |
| 5.1% | 10.0% | 197 | 0.1% |
| 10.1% | 15.0% | 20,639 | 14.8% |
| 15.1% | 18.0% | 118,192 | 85.0% |
| | | | |
| | | | |
| Total | | 139,029 | 100.0% |

8. When AEIC's policyholders renew their annual homeowners insurance policies with AEIC, all of the rate increases that AEIC implemented during the last year are combined and take effect on renewal. The increased rate increases the premium, and the policyholder pays the significantly increased premium upon renewal. As a result of AEIC's rate hikes, renewing policyholders such as Plaintiff have paid premiums up to ***70% higher than the prior year for virtually the same insurance coverage***.

9. While AEIC may offer insurance policies at whatever rates and premiums they want (Texas is a file-and-use state), it must still comply with the Texas Insurance Code. AEIC has been violating Tex. Ins. Code § 550.002 and § 2251.005 for at least the past two years.

10. In violation of § 550.002, AEIC has increased the amount of funds to be automatically withdrawn from its renewing policyholder's accounts, including

Plaintiff's, without providing the required mailed notice of premium increases of 10% or more.

11. In violation of § 2251.005, AEIC has billed its policyholders, including Plaintiff, for significantly increased premiums without providing the required notice of its rate increases.

12. By violating these statutes, AEIC has obtained significantly higher premiums from its renewing policyholders. For example, AEIC's failure to provide the required notice deprived policyholders of the opportunity to make an informed decision whether to renew or shop around for a better rate, and caused policyholders to overpay for homeowners insurance by hundreds or thousands of dollars each year.

13. The way homeowners insurance is typically billed and paid makes the situation even worse for consumers, further highlighting the need for the required disclosures. The vast majority of homeowners have a mortgage, and they pay their mortgage, property taxes, and homeowners insurance premium via a single, combined monthly payment to a mortgage servicing company. When the time comes to renew the homeowners insurance policy for another year, AEIC sends a renewal packet to the homeowner, but that packet prominently states "THIS IS NOT A BILL." Instead, AEIC sends *the bill* for renewing (at the significantly increased rate) *to the mortgage servicer* rather than to the homeowner. The mortgage servicer automatically pays the bill from the homeowner's escrow account, thereby renewing the policy for another year at the higher premium. The payment of the new premium from the escrow account is automatic; if the insured does *nothing* (*i.e.*, does not

affirmatively opt out and cancel the policy), the funds are withdrawn from the escrow account to pay the new, higher premium. The mortgage servicer then recoups the increase in price from the homeowner during the next year.

14. Plaintiff brings this action individually and on behalf of a proposed Class comprising all persons who renewed residential property insurance policies with AEIC for a property in Texas on or after November 5, 2023 ("Class Period") and were damaged when: (1) AEIC's rate increases resulted in the policyholder paying a premium that was at least 10% greater than the premium paid by the policyholder for the 12-month period, or policy period, preceding the renewal; and/or (2) the policyholder's renewal premium was paid to AEIC automatically from the policyholder's account and was at least $10 or 10% greater than the previous premium amount per month preceding the renewal.[2]

## THE PARTIES

15. Plaintiff Ben Linyard is an individual who resides and is domiciled in Flint, Texas. He purchased a homeowners insurance policy from AEIC for his primary residence in Flint and renewed his policy during the Class Period.

16. Defendant American Economy Insurance Company is a corporation incorporated in Indiana, with its principal place of business in Boston,

[2] Excluded from the Class are (i) Defendant; (ii) all present and former officers, directors, or control persons of Defendant; (iii) the present and former parents, subsidiaries, assigns, successors, predecessors, and affiliates of any Defendant; (iv) any Judge or Magistrate Judge presiding over this action and the members of their immediate family; (v) counsel for any party to this action, and any experts or consultants retained by counsel in this action; (vi) any entity in which any person excluded under subsections (i)-(iii) has or had a material ownership interest; and (vii) any excluded person's legal representatives, heirs, successors, predecessors, or assigns.

Massachusetts. According to the TDI, AEIC was the seventh-largest homeowners insurance provider in Texas in 2023, by total written premiums and market share.[3]

## JURISDICTION AND VENUE

17. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and the matter is a class action in which one or more members of the proposed Class is a citizen of a State different from Defendant. Plaintiff and the vast majority of class members are citizens of Texas, while Defendant is a citizen of Indiana and Massachusetts.

18. The Court has personal jurisdiction over Defendant because the claims alleged herein arise from or relate to Defendant's actions in Texas. By conducting business in Texas, including selling homeowners insurance policies to over 100,000 customers for properties in Texas, Defendant purposefully availed itself of the privilege of doing business in this State.

19. Venue is proper under 28 U.S.C. § 1391 because a substantial part of Defendant's conduct giving rise to the claims occurred in this District.

## SUBSTANTIVE ALLEGATIONS

### Texas Insurance Code § 550.002

20. If an insurer receives automatic premium payments for insurance coverage "from a person's account, including an escrow account," the Texas Insurance

[3] Texas Department of Insurance, "Top 40 list of insurers in Texas," *available at* https://www.tdi.texas.gov/company/top40.html#homeowner

Code states that the insurer "***may not increase the amount of funds to be withdrawn*** from the account to pay premiums on that coverage ***unless*** the insurer … ***notifies the person of the increase*** by mailing a notice." TEX. INS. CODE § 550.002(b) (emphasis added).

21. This requirement does not apply if the premium increase is less than $10 or 10% of the previous amount per month. TEX. INS. CODE § 550.002(d).

**Texas Insurance Code § 2251.005**

22. For homeowners insurance, the Texas Insurance Code also requires insurers to provide notice to policyholders of any *rate* increase that will result in the renewal premium increasing by at least 10% since the last policy period:

> **Sec. 2251.005. NOTICE OF RATE INCREASE FOR RESIDENTIAL PROPERTY INSURANCE POLICIES.**
>
> (a) An insurer ***shall*** notify a policyholder of a residential property insurance policy issued by the insurer ***of a rate increase*** scheduled to take effect on the policy's renewal ***that will result in a premium amount to be paid by the policyholder that is at least 10 percent greater*** than the lesser of:
>
> (1) the premium amount paid by the policyholder for coverage under the policy during the 12-month period preceding the policy's renewal date; or
>
> (2) the premium amount paid by the policyholder for coverage under the policy during the policy period preceding the policy's renewal date.
>
> (b) An insurer shall send the notice required by Subsection (a) before the renewal date and not later than the 30th day before the date the rate increase is scheduled to take effect.

TEX. INS. CODE § 2251.005(a)-(b) (emphasis added).

23. As the statute itself explains, one of the "purposes of this subchapter" is to "promote price competition among insurers to provide rates and premiums that are responsive to competitive market conditions." § 2251.001.

24. The statute promotes price competition in two ways. First, if a policyholder receives express notice that their insurer is raising its rates by more than 10%, the policyholder is more likely to shop for comparable coverage at a lower cost from the insurer's competitors. Second, this increased price transparency will factor into the insurer's decision-making, and temper against large rate increases. Increased information for consumers and increased price competition makes it harder for an insurer to extract exorbitant price increases from unwitting customers who may automatically renew without realizing how much their premiums have increased. This is especially true for the majority of policyholders who pay their homeowners insurance premiums through combined mortgage and escrow payments. Insurance premiums are typically only a relatively small part of the total monthly payment when lumped in with mortgage principal and interest payments and property tax payments.

25. The statutory notices required by § 550.002 and § 2251.005 are also referenced in the "Consumer Bill of Rights" form adopted by the TDI, which is required to be included in every homeowners renewal packet sent to policyholders (28 TEX. ADMIN. CODE § 5.9971):

> **CONSUMER BILL OF RIGHTS**
> **Homeowners, Dwelling, and Renters Insurance**
>
> **What is the Bill of Rights?**
> It is a basic outline of important rights you have under Texas law. Insurance companies must give you this Bill of Rights with your policy. It is important to read and understand your policy.

* * *

> **13. Notice of premium increase.** If your insurance company plans to increase your premium by 10% or more on renewal, your company must send you notice of the rate increase at least **30 days** before your renewal date.

**Defendant's Violations of § 550.002 and § 2251.005**

26. Plaintiff Ben Linyard resides with his wife and two children in a four-bedroom, three-bathroom home in Flint, Texas. The house is approximately 2,780 square feet and was built in 2015. Plaintiff purchased the home in 2015 with a mortgage loan.

27. Like most homeowners, Plaintiff pays a monthly payment to his mortgage servicer. The monthly payment includes the loan principal and interest payment, as well as additional funds that the mortgage servicer collects and holds in escrow for the annual payment of property taxes and homeowners insurance when due.

28. When the time comes for the annual homeowners insurance policy to be renewed for another year (via payment of the annual premium), the insurer sends a renewal packet to the policyholder. If the policyholder has a mortgage servicer (like Plaintiff), the renewal packet states in prominent bold type that "THIS IS NOT A BILL." The *bill* for the premium payment is not sent to the policyholder, it is sent

directly to *the mortgage servicer*. The mortgage servicer then automatically pays the insurer directly on the homeowner's behalf from an escrow account, and the policy is renewed for another year, unless and until the policyholder affirmatively opts out by canceling or changing their policy.

29. If the new annual premium is more than the mortgage servicer had estimated and collected in escrow for that purpose during the past year, the result is an escrow shortage. The mortgage servicer automatically pays the insurer the full amount of the billed premium when due (thereby renewing the policy for another year), but the mortgage servicer revises the amount of the homeowner's monthly payment upwards to cover any shortfall during the next year.

**<u>Plaintiff's Renewal in November 2023</u>**

30. Plaintiff purchased homeowners insurance from AEIC for the period November 25, 2022 to November 25, 2023.

31. When the time came to renew the same coverage for the following year, AEIC sent Plaintiff a renewal packet. The 2023 renewal packet sent to Plaintiff is attached hereto as **Exhibit A**.

32. The 2023 renewal packet included a letter, the Consumer Bill of Rights form referenced above, and a declarations page. The letter stated:

Safeco Insurance™
A Liberty Mutual Company

SMITH-ALLEN INS AGENCY INC
12750 MERIT DR # 540
DALLAS TX 75251

September 21, 2023

Policy Number: OY8310699
24-Hour Claims: 1-800-332-3226
Policy Service: (214) 691-7655
Online Account Services: www.safeco.com

**THIS IS NOT A BILL.**

BEN LINYARD
SARAH LINYARD
19500 SANDHILL LN
FLINT TX 75762-9188

* * *

With this renewal the following changes were made, including those requested by you or your agent or broker:

- Your Dwelling Limits (Coverage A) changed from $434,100 to $450,600. Other coverage limits listed below also changed since they are factors of your dwelling limits.
- Your Other Structure Limits (Coverage B) changed from $43,410 to $45,060.
- Your Personal Property Limits (Coverage C) changed from $260,460 to $270,360.
- Your Additional Living Expense (Coverage D) changed from $86,820 to $90,120.

We would also like to draw your attention to the following:

• Your new policy period begins November 25, 2023. The 12-month premium for this policy is $3,083.00 for the November 25, 2023 to November 25, 2024 policy term.

Exhibit A at 1.

33. The annual premium for the renewed policy was $3,083. Unbeknownst to Plaintiff, this reflected a rate increase (or increases) implemented by AEIC during the prior policy year, which took effect upon renewal. The rate increase(s) translated to an increase of much greater than 10% over the prior year's premium. Indeed, Plaintiff's annual premium amount **increased by 27.9% compared to the prior**

**year** for essentially the same coverage, while the various coverage limits increased by only 3.8%.[4]

34. Nowhere in the renewal packet, nor in any other notice received by Plaintiff, did AEIC make the disclosure of a premium increase required by § 550.002(b) or the disclosure of a rate increase required by § 2251.005. In fact, the renewal packet does not even state what the prior year's premium was. In contrast, AEIC detailed each of the minor (3.8%) increases in various coverages shown above, allowing an easy comparison of the prior year's amounts to this year's.

35. Despite the fact that AEIC did not give any notice of the premium increase, the renewal packet included the following form:

> Please review the enclosed renewal statement for any coverage or rating changes, and your new premium. Changes that affect the premium may include revised rates, corrections to how your policy is rated, and coverage changes, including changes requested by you or your agent.
>
> The premium due for this renewal is paid by your mortgagee. Texas law requires that we provide you with an opportunity to object to automatic payment of increased premiums by your mortgagee.
>
> Your agent is aware of policy premiums and changes that affect your premium. If you have questions, we recommend that you contact your agent at (214) 691-7655.
>
> After you consult with your agent, if you decide that you do not want your mortgagee to pay the premium to renew this policy, please contact your mortgagee or complete this form and return it to us within the next 15 days. If we receive this form from you, we will notify your agent and your mortgagee that you do not wish to renew this policy.
>
> ☐ I do not wish my mortgagee to pay the premium to renew my policy.

Exhibit A at 11. While intentionally vague, this form is apparently intended to address (in part) AEIC's obligations under § 550.002(b) to provide an opt-out opportunity, as it acknowledges that Plaintiff's premium is paid automatically from a mortgage escrow account, and states that Plaintiff must affirmatively opt out of

[4] Plaintiff's annual premium for the prior year was $2,410.

such automatic premium payment within 15 days. But again, AEIC ***did not disclose that Plaintiff's premium had actually increased or the amount of the increase***.

36. AEIC then sent the bill for the premium amount directly to Plaintiff's mortgage servicer, who paid it automatically to AEIC from Plaintiff's escrow account. Thus, Plaintiff's homeowners insurance with AEIC was renewed for another year without Plaintiff ever receiving the notices required by § 550.002(b) or § 2251.005.

37. AEIC's violations of § 550.002(b) and § 2251.005 are also evidenced by a comparison to the notices provided by some of its direct competitors in Texas. For example, the first page of the renewal packet sent by State Farm Lloyd's (the largest homeowners' insurance provider in Texas in 2023, per the TDI), states for the policyholder: "Your premium has increased more than 10%."

> **IMPORTANT MESSAGES**
>
> Your premium has increased more than 10%. Please see the enclosed insert for additional information.
> THIS POLICY CONTAINS A POLLUTION EXCLUSION (INCLUDING BUT NOT LIMITED TO ASBESTOS AND LEAD) LOCATED UNDER SECTION II - EXCLUSIONS.
> The Inflation Coverage provision may change your deductible. Refer to page 11 of your policy.

38. Likewise, the renewal packet sent by another AEIC competitor, Travelers Personal Insurance Company (#3 in the TDI 2023 market share rankings), states for policyholders that "We wish to inform you that your renewal policy premium has increased 10% or more."

> We wish to inform you that your renewal policy premium has increased 10% or more.
>
> This policy contains pollution exclusions under the Property Coverage Section and the Liability Coverage Section.

**Plaintiff's Renewal in November 2024**

39. The same cycle repeated itself, but worse, in 2024. When the time came to renew the same policy for the year of November 25, 2024 to November 25, 2025, AEIC again sent Plaintiff a renewal packet. The 2024 renewal packet sent to Plaintiff is attached hereto as **Exhibit B**.

40. The 2024 renewal packet again included the same form letter, the Consumer Bill of Rights form referenced above, and a declarations page. The form letter stated:

> Safeco Insurance™
> A Liberty Mutual Company
>
> SMITH-ALLEN INS AGENCY INC
> 12750 MERIT DR # 540
> DALLAS TX 75251
>
> September 22, 2024
>
> Policy Number: OY8310699
> 24-Hour Claims: 1-800-332-3226
> Policy Service: (214) 691-7655
> Online Account Services: www.safeco.com
>
> **THIS IS NOT A BILL.**
>
> BEN LINYARD
> SARAH LINYARD
> 19500 SANDHILL LN
> FLINT TX 75762-9188

* * *

> With this renewal the following changes were made, including those requested by you or your agent or broker:
>
> - Your Dwelling Limits (Coverage A) changed from $450,600 to $453,400. Other coverage limits listed below also changed since they are factors of your dwelling limits.
> - Your Other Structure Limits (Coverage B) changed from $45,060 to $45,340.
> - Your Personal Property Limits (Coverage C) changed from $270,360 to $272,040.
> - Your Additional Living Expense (Coverage D) changed from $90,120 to $90,680.
> - New Renovated Home Discount is added.
>
> We would also like to draw your attention to the following:
>
> • Your new policy period begins November 25, 2024. The 12-month premium for this policy is $5,229.00 for the November 25, 2024 to November 25, 2025 policy term.

Exhibit B at 1. The renewal again included the same automatic premium payment opt-out form:

> Please review the enclosed renewal statement for any coverage or rating changes, and your new premium. Changes that affect the premium may include revised rates, corrections to how your policy is rated, and coverage changes, including changes requested by you or your agent.
>
> The premium due for this renewal is paid by your mortgagee. Texas law requires that we provide you with an opportunity to object to automatic payment of increased premiums by your mortgagee.
>
> Your agent is aware of policy premiums and changes that affect your premium. If you have questions, we recommend that you contact your agent at (214) 691-7655.
>
> After you consult with your agent, if you decide that you do not want your mortgagee to pay the premium to renew this policy, please contact your mortgagee or complete this form and return it to us within the next 15 days. If we receive this form from you, we will notify your agent and your mortgagee that you do not wish to renew this policy.
>
> ☐ I do not wish my mortgagee to pay the premium to renew my policy.

Exhibit B at 11. Again, nowhere in the renewal packet or elsewhere did AEIC provide the notice of a premium increase required by § 550.002(b) or the disclosure of a rate increase required by § 2251.005. The renewal packet does not mention any premium or rate increase, the amount of the increase, or what the prior year's premium was.

41. Unbeknownst to Plaintiff, AEIC had again increased its rates significantly during the prior year, and those increased rates took effect on renewal. As a result of the rate increase(s), AEIC increased Plaintiff's premium amount by more than 10%. This time, Plaintiff's premium amount ***increased by 69.6%***

***compared to the prior year*** for essentially the same coverage, while the various coverage limits increased by a mere 0.6%.

42. AEIC again sent the bill for the premium amount directly to Plaintiff's mortgage servicer, who paid it automatically to AEIC from Plaintiff's escrow account, renewing Plaintiff's policy with AEIC for another year without Plaintiff ever receiving the notices required by § 550.002(b) or § 2251.005.

43. In two years, Plaintiff's annual premium increased by 117% for essentially the same coverage, while the various coverage limits increased by only 4.4% over that same period.

**Plaintiff Discovers the Premium Increases, Switches Insurers**

44. During this time, Plaintiff continued to make payments to his mortgage servicer, including for the renewed AEIC homeowners insurance policy premiums, unaware of the rate or premium increases.

45. In February 2025, Plaintiff received a notice from his mortgage servicer that his prior monthly payment of $1,778.44 was now going up to $2,312.87 per month, due to an escrow shortage. Shocked that his monthly payment was increasing by over $534 (a 30.0% increase), Plaintiff determined to find out the cause of the escrow shortage.

46. Plaintiff then discovered the facts above, that his AEIC homeowners insurance premium had increased 69.6% in the last year alone, and by a total of 117% over the last two years. Plaintiff promptly solicited quotes from competing insurers and was able to obtain comparable homeowners insurance coverage from another

large insurer for an annual premium of $3,180 (rather than $5,229 charged by AEIC upon the automatic renewal).

47. Upon Plaintiff switching to the new policy and cancelling his policy with AEIC, AEIC refunded the "unearned" portion of the annual premium paid in November 2024, meaning the prorated portion of the premium for the period between cancellation and the end of the policy. However, the damage had already been done. Plaintiff had overpaid AEIC for homeowners insurance since at least November 25, 2023.

48. Had AEIC provided notice of the significant rate and premium increases, as required pursuant to §§ 550.002(b) and 2251.005, Plaintiff would not have paid the higher premiums to renew his AEIC policy and would have obtained comparable coverage for lower rates and premiums, which was available from AEIC's competitors at the time, as he later did upon learning of the increased premiums.

**<u>Private Right of Action</u>**

49. Texas Insurance Code Chapter 541 prohibits unfair or deceptive acts or practice in the business of insurance.

50. Section 541.151(1) provides a private right of action for damages caused by unfair or deceptive acts or practices in the business of insurance:

> **Sec. 541.151. PRIVATE ACTION FOR DAMAGES AUTHORIZED.**
>
> A person who sustains actual damages may bring an action against another person for those damages caused by the other person engaging in an act or practice:

> (1) ***defined by Subchapter B to be an unfair method of competition or an unfair or deceptive act or practice in the business of insurance***; or
>
> (2) specifically enumerated in Section 17.46(b), Business & Commerce Code, as an unlawful deceptive trade practice if the person bringing the action shows that the person relied on the act or practice to the person's detriment.

TEX. INS. CODE § 541.151 (emphasis added).

51. In turn, § 541.061 (which is in Subchapter B) states that "[i]t is an unfair method of competition or an unfair or deceptive act or practice in the business of insurance to misrepresent an insurance policy by: . . . (5) ***failing to disclose a matter required by law to be disclosed, including failing to make a disclosure in accordance with another provision of this code.***" TEX. INS. CODE § 541.061 (emphasis added).

52. As discussed above, the Texas Insurance Code requires insurers to disclose (1) a premium increase of 10% or more (§ 550.002(b)), and (2) a rate increase that will result in a premium increase of 10% or more (§ 2251.005).

53. Accordingly, § 541.151 provides a private right of action for AEIC's violations of § 550.002(b) and § 2251.005.

54. Section 541.152 provides various statutory remedies, including treble damages, attorney's fees, injunctive relief, and "any other relief the court determines is proper":

> **Sec. 541.152. DAMAGES, ATTORNEY'S FEES, AND OTHER RELIEF.**
>
> (a) A plaintiff who prevails in an action under this subchapter may obtain:

> (1) the amount of actual damages, plus court costs and reasonable and necessary attorney's fees;
>
> (2) an order enjoining the act or failure to act complained of; or
>
> (3) any other relief the court determines is proper.
>
> (b) Except as provided by Subsection (c), on a finding by the trier of fact that the defendant knowingly committed the act complained of, the trier of fact may award an amount not to exceed three times the amount of actual damages.
>
> (c) Subsection (b) does not apply to an action under this subchapter brought against the Texas Windstorm Insurance Association.

TEX. INS. CODE § 541.152.

55. Additionally, § 541.251(a) specifically authorizes insurance consumers to bring claims as a class action:

> **Sec. 541.251. CLASS ACTION AUTHORIZED.**
>
> (a) If a member of the insurance buying public has been damaged by an unlawful method, act, or practice defined in Subchapter B as an unlawful deceptive trade practice, the department may request the attorney general to bring a class action ***or the individual damaged may bring an action on the individual's own behalf and on behalf of others similarly situated to recover damages and obtain relief as provided by this subchapter***.

TEX. INS. CODE § 541.251(a) (emphasis added).

## CAUSES OF ACTION

### COUNT I: Claim Under Texas Insurance Code § 541.151 for Violations of § 550.002

56. Plaintiff incorporates and realleges each of the facts alleged above, as if set forth fully herein.

57. Plaintiff brings this claim individually and on behalf of the Class.

58. "The elements of a Chapter 541 claim are: (1) the parties are each a 'person' under the Insurance Code; (2) the defendant engaged in an unfair act or practice listed in the code; and (3) the unfair act or practice was the producing cause of actual damages." *Megalomedia, Inc. v. Philadelphia Indem. Ins. Co.*, No. 4:20-CV-01644, 2023 WL 6316173, at *9 (S.D. Tex. Sept. 28, 2023).

59. Plaintiff is an individual who purchased homeowners insurance from Defendant, and is therefore a "person" as defined in § 541.002(2). *See* TEX. INS. CODE § 541.002(2) ("'Person' means an individual, corporation, association, partnership, reciprocal or interinsurance exchange, Lloyd's plan, fraternal benefit society, or other legal entity engaged in the business of insurance, including an agent, broker, or adjuster.").

60. The members of the proposed Class are also individuals or other legal entities who purchased and renewed homeowners insurance from Defendant, and are therefore "persons" as defined in § 541.002(2).

61. Defendant is a corporation who sells homeowners insurance in Texas, and is therefore a "person" as defined in § 541.002(2).

62. Defendant engaged in unfair acts or practices listed in the Texas Insurance Code in § 541.061(5) by violating § 550.002(b).

63. Specifically, in violation of § 550.002(b), Defendant increased the amount of funds to be automatically withdrawn from Plaintiff's escrow account to pay premiums for insurance coverage without notifying Plaintiff by mail of the premium increase (which was 10% or more). Similarly, Defendant increased the amount of funds to be automatically withdrawn from Class members' accounts to pay insurance premiums without notifying the Class members by mail of the premium increase (which was 10% or more).

64. Defendant's form renewal packet sent to Plaintiff and Class members did not contain any notice of the premium increases. Defendant did not mail any other notice to Plaintiff or Class members informing them of the premium increases.

65. Defendant received automatic payment of Plaintiff's and Class members' premiums through withdrawal of funds from Plaintiff's and Class members' accounts, without Defendant giving any notice of the premium increases.

66. Defendant's violation of § 550.002(b) was a producing cause of economic damages to Plaintiff and the Class. Because Defendant did not provide the required notice of a premium increase, Defendant was prohibited from increasing the amount of funds to be automatically withdrawn from Plaintiff's and Class members' accounts under § 550.002(b). Nevertheless, Defendant increased the amount of funds to be automatically withdrawn from Plaintiff's and Class members' accounts, and Defendant collected the increased amounts from Plaintiff and the Class members.

Accordingly, Plaintiff and the Class suffered economic damages in the amount that Defendant collected from them in violation of the statute.

67. Alternatively, Plaintiff and the Class suffered economic damages because had AEIC provided the notice required under § 550.002(b), Plaintiff and Class members would not have renewed their policy with AEIC at the higher premiums. Plaintiff and Class members would have obtained comparable coverage for lower rates and premiums, which was available from AEIC's competitors at the time.

68. AEIC's acts in violation of § 550.002(b) were done knowingly, entitling Plaintiff and the Class to treble damages under § 542.152(b).

69. Plaintiff, on behalf of himself and the Class, also seeks "any other relief that the court deems proper" under § 542.152(a)(3), including a refund of any amounts obtained in violation of the Texas Insurance Code.

70. Plaintiff, on behalf of himself and the Class, also seeks recovery of reasonable and necessary attorney's fees under § 542.152(a)(1).

71. Plaintiff, on behalf of himself and the Class, also seeks injunctive relief, as authorized by § 542.152(a)(2), in the form of an order enjoining Defendant from increasing the amount of funds to be automatically withdrawn from any renewing insured's account in violation of § 550.002(b).

**COUNT II: Claim Under Texas Insurance Code § 541.151 for Violations of § 2251.005(a).**

72. Plaintiff incorporates and realleges each of the facts alleged above, as if set forth fully herein.

73. Plaintiff brings this claim individually and on behalf of the Class.

74. Plaintiff and the members of the proposed Class are individuals or other legal entities who purchased and renewed homeowners insurance from Defendant, and are therefore "persons" as defined in § 541.002(2).

75. Defendant is a corporation who sells homeowners insurance in Texas, and is therefore a "person" as defined in § 541.002(2).

76. Defendant engaged in unfair acts or practices listed in the Texas Insurance Code in § 541.061(5), by violating § 2251.005.

77. In violation of § 2251.005(a), Defendant billed Plaintiff for a rate increase (or rate increases) on the renewal of Plaintiff's homeowners insurance policy, which resulted in a premium increase of greater than 10% over the premium paid for the prior policy period, without notifying the Plaintiff of the rate increase(s). Similarly, Defendant billed each Class member for a rate increase (or rate increases) upon the renewal of their policies, which resulted in a premium increase of 10% or greater over the premiums paid for the prior policy periods, without notifying the Class member of the rate increase(s).

78. Defendant's form renewal packet sent to Plaintiff and Class members did not contain any notice of a rate increase. Defendant did not provide any other notice to Plaintiff or other Class members informing them of any rate increase.

79. Plaintiff and the Class paid Defendant the increased annual premiums to renew their policies, without Defendant giving any notice of the rate increases that caused premium increases of 10% or more.

80. Defendant's unfair act or practice of billing Plaintiff and Class members for substantial rate increases upon renewal (those that increased the premium amount 10% or more) without notice of any rate increase was a producing cause of economic damages to Plaintiff and to the Class.

81. Plaintiff and the Class suffered economic damages because had AEIC provided the notice required under § 2251.005(a), Plaintiff and Class members would not have renewed their policy with AEIC at the higher premiums. Plaintiff and Class members would have obtained comparable coverage for lower rates and premiums, which was available from AEIC's competitors at the time.

82. Alternatively, the premium amounts that Plaintiff and Class members paid AEIC at or above a 10% increase from the prior premium constitutes economic damages. Had AEIC increased Plaintiff's and Class members' premiums by less than 10%, AEIC would not have violated § 2251.005 and Plaintiff and Class members would not have paid premiums that increased 10% or more to renew their policies.

83. AEIC's acts in violation of § 2251.005 were done knowingly, entitling Plaintiff and the Class to treble damages under § 542.152(b).

84. Plaintiff, on behalf of himself and the Class, also seeks "any other relief that the court deems proper" under § 542.152(a)(3), including a refund of any amounts obtained in violation of the Texas Insurance Code.

85. Plaintiff, on behalf of himself and the Class, also seeks recovery of reasonable and necessary attorney's fees under § 542.152(a)(1).

86. Plaintiff, on behalf of himself and the Class, also seeks injunctive relief, as authorized by § 542.152(a)(2), in the form of an order enjoining Defendant from failing to provide the notice required by § 2251.005 and requiring Defendant to provide such notice to Plaintiff and Class members for policies that renewed during the Class Period and that will renew in the future.

87. Pursuant to § 541.255, Plaintiff sent the required pre-suit notice to AEIC on February 21, 2025, and a copy of the same to the TDI. AEIC responded via letter dated March 24, 2025, denying any wrongdoing.

**COUNT III: Claim For Unjust Enrichment**

88. Plaintiff incorporates and realleges each of the facts alleged in paragraphs 1 through 55 above, as if set forth fully herein.

89. Plaintiff brings this claim individually and on behalf of the Class.

90. This equitable claim is asserted in the alternative, if Plaintiff and the Class lack an adequate remedy at law.

91. Plaintiff and Class members paid AEIC increased premiums when renewing their homeowners insurance policies during the Class Period.

92. As alleged in detail above, AEIC increased Plaintiff's and Class members' premiums by 10% or more, and received automatic payment of the increased premium amounts from Plaintiff's and Class members' accounts. AEIC did not provide Plaintiff or Class members with express notice of the rate increases or the premium increases. Plaintiff and Class members did not take any affirmative

steps to confirm their consent to the increased premiums that AEIC automatically withdrew from their accounts.

93. In this way, AEIC obtained a benefit from Plaintiff and Class members by taking of an undue advantage, in the amount of the increased premiums. In the alternative, AEIC has passively received a benefit that would be unconscionable to retain, in the amount of the increased premiums.

## CLASS ACTION ALLEGATIONS

94. Plaintiff brings this action under Rule 23 of the Federal Rules of Civil Procedure, individually and on behalf of a Class consisting of all persons who renewed residential property insurance policies with AEIC for a property in Texas on or after November 5, 2023 ("Class Period"), where: (1) AEIC's rate increases resulted in the policyholder paying a premium that was at least 10% greater than the premium paid by the policyholder for the 12-month period, or policy period, preceding the renewal; and/or (2) the policyholder's renewal premium was paid to AEIC automatically from the policyholder's account and was at least $10 or 10% greater than the previous premium amount per month preceding the renewal; and who were damaged thereby.

95. The following people are excluded from the Class: (i) Defendant; (ii) all present and former officers, directors, or control persons of Defendant; (iii) the present and former parents, subsidiaries, assigns, successors, predecessors, and affiliates of any Defendant; (iv) any Judge or Magistrate Judge presiding over this action and the members of their immediate family; (v) counsel for any party to this action, and any experts or consultants retained by counsel in this action; (vi) any

entity in which any person excluded under subsections (i)-(iii) has or had a material ownership interest; and (vii) any excluded person's legal representatives, heirs, successors, predecessors, or assigns.

96. The proposed Class is so numerous that joinder is impractical. Plaintiffs believe that there are tens of thousands of Class members, if not over one hundred thousand Class members. AEIC's March 2024 rate filings with the TDI showed that approximately 138,831 AEIC homeowners insurance policies had rate increases of greater than 10%.

97. There are questions of law and fact common to the proposed Class. Each class member was harmed by Defendant's common scheme, in the same way as Plaintiff. Common questions of law and fact include, without limitation:

- Whether the amount that AEIC raised its premiums required it to give notice under § 550.002 to its renewing policyholders paying AEIC automatically from an account;
- Whether the amount that AEIC raised its rates required it to give notice under § 2251.005(a) to its renewing policyholders;
- Whether AEIC failed to disclose to the premium increases of 10% or more in violation of § 541.061(5) and § 550.002;
- Whether AEIC failed to disclose rate increases of 10% or more in violation of § 541.061(5) and § 2251.005(a);
- Whether AEIC increased the amount of funds to be withdrawn automatically from policyholders' accounts;

- Whether AEIC's violations of § 550.002 and § 2251.005(a) were done knowingly;
- Whether AEIC's violations of § 550.002 and § 2251.005(a) caused Class members to overpay for homeowners insurance by renewing with AEIC.

98. Plaintiff's claims are typical of those of the Class. Like the other members of the Class, Plaintiff renewed his homeowners insurance with AEIC during the Class Period. AEIC did not provide Plaintiff with the statutorily required notice of significant rate increases. AEIC increased the amount of funds to be automatically withdrawn from Plaintiff's escrow account to pay for his insurance coverage premium, which had increased more than 10%, without providing Plaintiff notice of the premium increase. These violations caused Plaintiff to suffer damages.

99. Prosecuting separate individual actions would be an inefficient use of judicial resources and could result in inconsistent outcomes and inconsistent standards for Defendant. For example, separate individual actions would risk inconsistent findings on whether Defendant violated § 541.061(5), § 550.002, and § 2251.005(a) with respect to similarly-situated policyholders.

100. This action is appropriately brought as a class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure. Common questions of law and fact predominate over any individual questions. For example, core questions of law and fact (listed above) are shared among the Class and predominate over individualized issues.

101. A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because the individual litigation of each claim is impractical. It would be unduly burdensome to litigate tens of thousands (or more) individual claims in separate lawsuits, every one of which presents substantially the same issues present here.

102. For many Class members, pursuing an individual action is not financially feasible in light of the relatively small amount of their potential damages, meaning they would be denied any relief without a class action. Concentrating the claims of all Class members in a single forum will conserve judicial resources and is unlikely to present difficulties in managing the action, considering a single course of conduct by Defendant affected all Class members.

103. The identity of Class members can be reasonably ascertained from AEIC's records.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the Class, prays for judgment and relief against Defendant as follows:

A. Determining that this action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as a class representative and Plaintiff's counsel as class counsel;

B. Awarding damages in favor of Plaintiff and the Class against Defendant, for all damages sustained as a result of Defendant's wrongdoing, in an amount to be proven at trial, including interest thereon and treble damages;

C. Awarding "any other relief that the court deems proper" under § 542.152(a)(3), including a refund of any amounts obtained in violation of the Texas Insurance Code;

D. Granting injunctive relief as authorized by § 542.152(a)(2);

E. Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including attorneys' fees, expert fees, and other costs; and

F. Awarding Plaintiff and the Class such other and further relief as this Court may deem just and proper.

**JURY TRIAL DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: January 28, 2026.

Respectfully Submitted,

/s/ Grayson L. Linyard
Grayson L. Linyard
Texas Bar No. 24070150
**LINYARD PLLC**
6744 Avalon Ave.
Dallas, TX 75214
Telephone: (214) 415-0580
Email: gray@linyardpllc.com

Joshua Baker (*pro hac vice*)
**THE ROSEN LAW FIRM, P.A.**
101 Greenwood Avenue, Suite 440
Jenkintown, PA 19046
Telephone: (215) 600-2817
Fax: (212) 202-3827
Email: jbaker@rosenlegal.com

Phillip Kim (*pro hac vice*)
**THE ROSEN LAW FIRM, P.A.**
275 Madison Avenue, 40th Floor
New York, NY 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com

*Counsel for Plaintiff and the Proposed Class*

## CERTIFICATE OF SERVICE

On January 28, 2026, I filed the foregoing document with the clerk of court for the U.S. District Court, Eastern District of Texas. I hereby certify that I have served the document on all counsel of record via the Court's electronic CM/ECF system.

/s/ Grayson L. Linyard
Grayson L. Linyard