UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS

No. 6:25-cv-00436

**Ben Linyard,**
*Plaintiff,*
v.
**American Economy Insurance Company,**
*Defendant.*

## OPINION AND ORDER

In this lawsuit, plaintiff claims that defendant failed to notify insurance policyholders of the relative amount of increase in the policy premium as required by Texas law. Doc. 15. Now before the court is defendant's motion to dismiss. Doc. 23. For the reasons set forth below, that motion is granted.

### I. Background

Like many homeowners, plaintiff bought his home with a mortgage loan and repays that loan through a mortgage servicer. Doc. 15 at 10. In that arrangement, the servicer collects monthly payments from the homeowner and holds that money in an escrow account. It then applies those funds toward the homeowner's loan, annual property taxes, and insurance. *Id.*

When the insurance policy is set to expire, the insurer sends a renewal packet to the homeowner. *Id.* at 10–11. The renewal packet is not a bill or invoice. *Id.* Rather, the insurer sends the bill directly to the mortgage servicer. *Id.* If the servicer pays the annual premium on the homeowner's behalf, then the policy is renewed for another year, unless and until the homeowner affirmatively opts out by canceling or changing his or her policy. *Id.* at 11.

From time to time, the insurer may increase the premiums that it charges for a policy. *Id.* As a result, the funds that the mortgage servicer collects from the homeowner may be insufficient to cover the new premium for a renewed policy. *Id.* In such cases, the

servicer pays the full amount of the billed premium and then increases the homeowner's monthly charges to cover the shortfall. *Id.* As designed, therefore, a homeowner's insurance policy is generally renewed and paid automatically, even if there is an increase in the premium. Doc. 24 at 7.

That is what happened here. *See id.*; Doc. 15 at 11–12. The defendant insurance company increased the premium that it charged for plaintiff's upcoming 2023 policy. Doc. 15 at 12. Plaintiff's mortgage servicer paid the increased premium and raised plaintiff's monthly mortgage payment accordingly. Doc. 24 at 7.

Plaintiff's response was this lawsuit. Plaintiff does not allege that he was unaware of the new premium amount or did not receive notice of it. But he alleges that defendant did not provide sufficient notice that the new premium was a certain percentage higher or certain dollar amount higher than his prior period's premium, as allegedly required by Texas Insurance Code §§ 541.061, 550.002, and 2251.005. Doc. 15 at 18–26.

Plaintiff seeks economic damages equaling the difference between the increased premium rate and the original rate, which is likely not a measure of actual damages available even were there a private right of action. *Id.* at 22–23; *see Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 817 (Tex. 1997). Alternatively, plaintiff alleges a difference between the cost of defendant's coverage and the cost of comparable coverage. *Id.* at 22–23.

## II. Legal standard

The court accepts well-pleaded allegations as true and construes those allegations in the light most favorable to the plaintiff. *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005). The court "will not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Arnold v. Williams*, 979 F.3d 262, 266 (5th Cir. 2020) (cleaned up). The question on a Rule 12(b)(6) motion is whether the complaint states a viable claim.

## III. Analysis

In moving to dismiss, defendant argues that (a) a private right of action for plaintiff's claims is not available under the Texas Insurance Code and (b) an unjust enrichment claim is not available under Texas common law. Doc. 23 at 4. The court addresses each argument in turn.

### A. Private right of action

**1.** Sections §§ 550.002 and 2251.005 of the Texas Insurance Code require insurers to disclose an "increase" in a policy's premium that is subject to automatic renewal. For purposes of this analysis, the court assumes that disclosing an increase in the premium is not satisfied by disclosing the new premium in accordance with statutory timelines but requires, as plaintiff contends, also disclosing some percentage or dollar amount by which the new premium exceeds the prior period's premium. The court makes that assumption without deciding the merits of that view.

Defendant challenges whether plaintiff has a private right of action to enforce his understanding of those provisions pursuant to Texas Insurance Code § 541.151. Doc. 15 at 19. Subsection (1) of that section provides, as relevant here, a private right of action for an individual who is damaged by "an unfair method of competition or an unfair or deceptive act or practice in the business of insurance," as that phrase is defined by subchapter B of chapter 541 of the Insurance Code. Tex. Ins. Code § 541.151(1).

Subchapter B, in turn, makes it a prohibited act or practice "to misrepresent an insurance policy by" one of five listed acts or omissions, including subsection (5)'s conduct of "failing to disclose a matter required by law to be disclosed, including failing to make a disclosure in accordance with another provision of this code." Tex. Ins. Code § 541.061 (emphasis added). Plaintiff argues that a private right of action exists for a failure to disclose a matter required by law to be disclosed, regardless of whether that failure misrepresented an insurance policy. Defendant disagrees.

When interpreting a Texas statute, the court must "'follow the same rules of construction that a Texas court would apply.'"

*Conn Credit I, L.P. v. TF LoanCo III, L.L.C.*, 903 F.3d 493, 500 (5th Cir. 2018) (citation omitted). As the Supreme Court of Texas has explained, the objective of statutory interpretation is "to ascertain and give effect to the Legislature's intent." *Hegar v. Health Care Serv. Corp.*, 652 S.W.3d 39, 43 (Tex. 2022) (cleaned up). That objective requires the court to "enforce the plain meaning of statutory text, informed by its context." *Id.* And "[w]hen text is clear and unambiguous, it is determinative of intent." *TIC Energy & Chem., Inc. v. Martin*, 498 S.W.3d 68, 74–75 (Tex. 2016).

So the court first turns to the statutory text of § 541.061. It defines an unfair or deceptive act, practice, or method as not just one of the five, enumerated acts or omissions alone, but as meaning "to misrepresent an insurance policy by" taking one of the listed acts or omissions. The statute thus unambiguously requires an enumerated subsection's conduct "to misrepresent an insurance policy" to qualify as unfair or deceptive. And "[i]f the text is unambiguous, we must take the Legislature at its word." *Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson*, 209 S.W.3d 644, 652 n.4 (Tex. 2006). Plaintiff's reading thus fails under the plain text.

Plaintiff's reading also violates the canon against surplusage. Plaintiff views only the five enumerated items as requirements to qualify as unfair or deceptive. But, if that were true, the statute would have the same scope as if it did not contain the phrase "misrepresent an insurance policy by." The Texas Supreme Court has "consistently and repeatedly acknowledged that courts 'must give effect to all words of a statute and not treat any language as surplusage.'" *Whole Woman's Health v. Jackson*, 642 S.W.3d 569, 581 (Tex. 2022) (citation omitted). Only defendant's interpretation gives weight to both phrases relevant here.

Of course, no canon of construction applies in isolation. But applying the canon here comports not only with the plain text of the statute but also its context. The requirement that given conduct actually misrepresent a policy in order to qualify as unfair or deceptive makes perfect sense. It ensures that the conduct in any one list item is of the sort that animates the Legislature's reasons

for prohibiting that conduct—its deceptiveness or unfairness, as opposed to mere shortcomings in regulatory compliance that do not misrepresent anything and can be handled by regulators.

**2.** Applying § 541.061's plain text here, plaintiff's claims under that statute fail because they do not plausibly allege a misrepresentation of an insurance policy. To reiterate, plaintiff undisputedly received timely notice of his new premium amount were he to stay with the renewing policy. Defendant wrote to plaintiff:

> We would also like to draw your attention to the following:
>
> - Your new policy period begins November 25, 2023. The 12-month premium for this policy is $3,083.00 for the November 25, 2023 to November 25, 2024 policy term.

Doc. 15-1 at 1. Defendant further asked plaintiff to review the renewal statement, noting that "[c]hanges that affect the premium may include revised rates." *Id.* at 11.

Plaintiff does not accuse defendant of misrepresenting the premium amount or charging him more than quoted for the new policy period. The alleged shortcoming, rather, is that defendant did not specify the percentage or dollar amount by which the premium for the new period exceeded the prior period's premium. That may be noncompliant with regulatory requirements, which again the court does not decide today. But that does not set forth an allegation that defendant misled plaintiff in any way about the price of the policy for the new period—which he was explicitly informed of. Because the complaint does not plausibly allege a misrepresentation of the policy sold to plaintiff, it does not allege conduct that constitutes an "unfair" or "deceptive" act or practice as defined in § 541.061 as to give plaintiff a private right of action. The court dismisses plaintiff's improper-notice claims.

**B. Unjust enrichment**

To the extent that unjust enrichment exists as an independent cause of action, *see Midwestern Cattle Mktg., L.L.C. v. Legend Bank, N.A.*, 999 F.3d 970, 972 (5th Cir. 2021), plaintiff must plead

that defendant obtained a benefit from plaintiff "by fraud, duress, or taking undue advantage." *Lowman v. Enter. Fin. Grp., Inc.*, No. 3:24-cv-02752, 2025 WL 2994737, at *7 (N.D. Tex. Aug. 12, 2025), *R&R adopted by* 2025 WL 2778380 (N.D. Tex. Sept. 30, 2025). Plaintiff alleges that defendant obtained the benefit of a renewed policy through the "undue advantage" of failing to notify plaintiff of the percentage or dollar amount by which the premium for his new policy period would exceed the premium for the prior period, while undisputedly advising him of what coverage he would get and how much it would cost. Doc. 15 at 26–27.

That claim fails, first, for the same reason as the claims under the Texas Insurance Code. Plaintiff has not plausibly alleged any fraud, duress, or undue advantage. Separately, the unjust-enrichment claim is also barred as a standalone claim because "a valid, express contract covers the subject matter of the parties' dispute." *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000). To the extent that plaintiff alleges a quasi-contractual duty to give not just notice of the price to be charged but also separate notice comparing that price with the price for a prior policy period, his equitable theory of recovery is untenable because the parties executed a contract that did not require such specific notice.

Plaintiff responds that his insurance contract with defendant does not cover the subject matter of the dispute because it does "not set forth any contractual obligation or agreement regarding how [defendant] will inform Plaintiff of rate increases or premium increases." Doc. 24 at 33. That argument misses the mark. The benefit that defendant obtained was premium payments for a policy period. The parties' contract covers the manner and method by which defendant obtained that benefit. As such, plaintiff cannot use a quasi-contract theory to impose additional duties when the parties' relationship is already governed by an express contract. *Fortune*, 52 S.W.3d at 684. For that additional reason, plaintiff fails to state a viable independent claim of unjust enrichment.

**IV. Conclusion**

The court grants defendant's motion to dismiss (Doc. 23) and dismisses plaintiff's claims with prejudice.

*So ordered by the court on November 6, 2026.*

J. CAMPBELL BARKER
United States District Judge